IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JESSICA SUMMERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:24-cv-02418-TLP-atc |
| v. ) | |
| ) | JURY DEMAND |
| CHARMS, LLC and RANDSTAD ) | |
| GENERAL PARTNER (US) LLC, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING MOTION TO DISMISS**

Plaintiff Jessica Summers was working in a temporary position with Defendant Charms, LLC ("Charms") and applied for a permanent job there. (ECF No. 23 at PageID 95.) But after offering her a permanent position, Charms failed to hire her. (*Id.* at PageID 95–96.) She alleges it failed to hire her because she suffers from a disability. (*Id.* at PageID 96.) So she brings this case under the Americans with Disabilities Act against Charms and Randstad General Partner (US), LLC ("Randstad").[1] (*Id.* at PageID 98.) Now Charms moves to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted. (ECF No. 26.) Charms argues that Plaintiff failed to allege she suffered from a disability. (*Id.* at PageID 112–13.) For the reasons explained below, the Court **DENIES** the motion to dismiss.

---

[1] Plaintiff amended her Complaint to add Randstad as a Defendant. (*Compare* ECF No. 1 *with* ECF No. 23.) But Plaintiff failed to serve Randstad for nearly seven months. (ECF No. 32.) On Plaintiff's motion, the Court granted an extension to serve Randstad (ECF No. 32), but it has yet to appear in this case.

1

## BACKGROUND

Jessica Summers ("Plaintiff") suffers from long QT syndrome. (ECF No. 23 at PageID 94.) Long QT syndrome affects the heart's rhythm—those afflicted have sudden fast and irregular heartbeats. (*Id.*) Because the heart's rhythm is affected, those with long QT may suddenly faint or seize. (*Id.*) To prevent the arrythmia and resulting fainting or seizures, Plaintiff cannot "perform manual tasks, engage in strenuous physical activities, stand or walk for long periods of time, perform continuous or heavy lifting, bend[] or stoop[], operate or be near heavy machinery or work in a class or range of jobs." (*Id.*)

Plaintiff worked for Charms in Covington, Tennessee, as a packer from August 2022 to January 2023. (*Id.*) On her first day on the job, she told her supervisor at Charms, Chuck Ruffin, about her disability. (*Id.*) Ruffin informed Plaintiff that her limitations would be "no issue." (*Id.*) Except for one short illness, she worked for Charms for several months without issues. (*Id.* at PageID 95.)

And after three months, Plaintiff applied for a job directly with Charms. (*Id.*) Ruffin aided her with the application. (*Id.*) And Charms offered her a job as a box line operator. (*Id.*) But the job offer letter required her to take a physical test through Rapid Care. (*Id.*) Due to her physical limitations, Rapid Care deferred the test and sent a form to Plaintiff's treating physician, who completed the physical and wrote under the "comments" section of the Rapid Care form that Plaintiff has a "history of long QT." (*Id.*; ECF No. 23-4.) The physician also advised Plaintiff "to avoid working close to heavy machinery and avoid strenuous physical activities." (ECF No. 23 at PageID 95; ECF No. 23-4.) When Charms received her paperwork, despite having offered her a job with the same or similar requirements she was already performing, Charms failed to hire her. (*Id.* at PageID 95–96.)

Plaintiff then filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* at PageID 93.) She received a Right to Sue letter from the EEOC, and sued Charms here within ninety days of receiving the letter. (*Id.*) She now alleges that Charms and Randstad violated the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act by refusing to hire her because of her disability. Charms now moves to dismiss the Amended Complaint. (ECF No. 25.) Plaintiff opposed the motion. (ECF No. 27.) And Charms replied. (ECF No. 28.) The Court now considers the motion to dismiss and, for the reasons below, **DENIES** it.

## LEGAL STANDARD

When evaluating a 12(b)(6) motion to dismiss, courts apply the standard of Federal Rules of Civil Procedure 8 and 12(b)(6) as construed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007). Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," thus giving the defendant "fair notice of what the claim is." *Twombly*, 550 U.S. at 555 (citation omitted). But the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of a cause of action's elements." *Id.* Simply put, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is "plausible" when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating plausibility, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022), *cert denied*,

143 S. Ct. 444 (2022) (citation omitted). But the court need not accept "legal conclusions or unwarranted factual inferences." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021) (quoting *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017)). And "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Arsan v. Keller*, 784 F. App'x 900, 909 (6th Cir. 2019) (quoting *Commercial Money Ctr. v. Ill. Union Ins.*, 508 F.3d 327, 336 (6th Cir. 2007)).

Lastly, when reviewing a motion to dismiss, the court generally restricts its review to the facts in the complaint. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022). Still, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024). That said, the Court will consider the exhibits attached to Plaintiff's Amended Complaint here.

## ANALYSIS

Charms moves to dismiss the Amended Complaint on narrow grounds. The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). And under the ADA, a plaintiff is disabled when he or she has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A); *see also* 29 C.F.R. § 1614.203(a)(2); § 29 C.F.R. § 1630.2(g). Major life activities include "caring for oneself, performing manual tasks, seeing,

hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Charms argues that Plaintiff has not alleged that she is disabled. In fact, it says that Plaintiff "does not allege an impairment that substantially limits one, or more, major life activity." (ECF No. 25 at PageID 109.) But Plaintiff asserts she has long QT syndrome and that the disease limits her ability to live and work normally.

The regulations for § 12102(1)(A) define each element of an ADA "disability." *See Darby v. Childvine, Inc.*, 964 F.3d 440, 445 (6th Cir. 2020). A "physical or mental impairment" is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems . . . ." 29 C.F.R. § 1630.2(h)(1). Alleging an impairment is "an appropriate threshold issue but not an onerous burden." *Darby*, 964 F.3d at 445 (citation omitted). Plaintiff has pleaded this element because she asserts that she suffers a physiological disorder—a condition that causes an arrythmia—affecting her heart. (ECF No. 23 at PageID 94.)

The regulations also clarify the meaning of "substantially limits." "'Substantially limits' is a relative term, one defined in relation to a person's ability to perform a major life activity 'as compared to most people in the general population.'" *Darby*, 964 F.3d at 445 (citing 29 C.F.R. § 1630.2(j)(1)(ii)). Impairments "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). And major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Plaintiff has pleaded facts here to survive dismissal because she claims that her heart "impairment" "significantly or severely restrict[s]" her ability to engage in major life activities. 29 C.F.R. § 1630.2(h)(1), (j)(1)(ii). For example, Plaintiff details how, because of long QT, her treating physician stated that "patient [is] advised to avoid working close to heavy machinery and avoid strenuous physical activities." (*Id.* at PageID 108.) She also risks fainting and seizures when the arrythmia begins. (ECF No. 23 at PageID 94.) In fact, to keep her heart rate under control or prevent greater danger, she alleges that she cannot "perform manual tasks, engage in strenuous physical activities, stand or walk for long periods of time, perform continuous or heavy lifting, bend[] or stoop[], operate or be near heavy machinery or work in a class or range of jobs." (ECF No. 23 at Page ID 96.) Of course, "performing manual tasks, . . . walking, standing, lifting, bending, . . . and working" are all major life activities. 42 U.S.C. § 12102(2)(A). And the general population readily engages in this conduct without restrictions. So Plaintiff has alleged that long QT "substantially limits one or more" of her "major life activities." 42 U.S.C. § 12102(1)(A); *see also* 29 C.F.R. § 1614.203(a)(2); 29 C.F.R. § 1630.2(g).

Charms complains that Plaintiff's statement is merely a "simple recitation of symptoms associated with long QT" and fails to "describe what activities are limited by said long QT." (ECF No. 26 at PageID 113.) This is factually incorrect. While she does describe some symptoms[2] of the disease—fainting, chaotic heartbeats, and seizures—the bulk of her allegations

---

[2] Charms fails to clarify why listing symptoms of a disease is not enough at the motion to dismiss stage. (*See* ECF No. 26.) Plaintiff alleges that she suffers from the disease and its symptoms. (*See* ECF No. 23 at PageID 94.) Charms also argues that because Plaintiff did not "alleg[e] that she suffers from fainting or seizures" (but only that she could or might), she has failed to identify a disability. (*Id.* at PageID 113.) But "controlling a disability"—such as with medication or by limiting activities through reasonable accommodations—"does not necessarily mean removing a disability." *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 855 (6th Cir. 2001) (holding that even though the plaintiff successfully took preventive measures to reduce the risk of seizures, the plaintiff was still disabled under the ADA). After all, courts determine "whether an impairment

relate to how long QT affects her daily activities. And, as noted above, she has alleged that she cannot, among other things "work[] close to heavy machinery" and that her long QT limits activities like standing, walking, lifting, and bending. (ECF No. 23 at PageID 108.)

Similarly, Charms contends that Plaintiff's allegations are "conclusory" and merely "recit[e]" the elements of an ADA claim.[3] (ECF No. 26 at PageID 113; ECF No. 28 at PageID 126–27.) And Charms correctly notes that when plaintiffs just state they are disabled but do not explain how, dismissal is appropriate. *See Bowers v. U.S. Postal Serv.*, No. 17-1259, 2017 U.S. App. LEXIS 22837 at *4 (6th Cir. Nov. 13, 2017) ("Bowers's complaint alleges only that he is 'a disabled veteran' with 'disabled veteran preference rights' and that he was discriminated against 'based on a disability condition.' But he does not identify his disability. Nor does he plead any facts leading to an inference that he suffers from a physical or mental impairment, much less that the impairment substantially limits a major life activity."); *Al-Janabi v. Wayne State Univ.*, No. 21-1399, 2021 WL 8264677, at *2 (6th Cir. Dec. 15, 2021) ("Al-Janabi alleged only that he asked his program director to extend his project's deadline 'and consider his vision loss and his known health issue . . . .' Besides neglecting to identify one of his disabilities, Al-Janabi did not allege that his impairments substantially limit a major life activity."); *Wilson v. Comcast Cable Commc'ns Mgmt., LLC*, No. 15-1009, 2016 WL 11782544, at *2 (6th Cir. Mar. 18, 2016) (noting that the plaintiff did not identify her disability in her second amended complaint). But that is not

---

substantially limits a major life activity . . . without regard to the ameliorative effects of mitigating measures," such as medications or reasonable accommodations. 42 U.S.C. § 12102(E)(i).

[3] As much as Charms tries to challenge whether Plaintiff has pleaded the other elements for an ADA claim in its reply, it has waived that argument for purposes of this motion. (*Compare* ECF No. 28 at PageID 126–27 (addressing each element of an ADA claim) *with* ECF No. 26 at PageID 112–14 (only discussing whether Plaintiff had a physical impairment that substantially limits a major life activity).) Charms did not raise it in its original motion or supporting brief, so it cannot argue it in its reply. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

the case here. Instead, Plaintiff alleges facts about her medical history and her medical provider's recommendations. (ECF No. 23.) She has identified her disability as long QT and explained that it limits major life activities like walking, lifting, and working.[4]

And Charms cites no case that supports its position here. Instead, it only cites *Barlia v. MWI Veterinary Supply Inc.*, No. 15-10243, 2017 WL 345644, at *8 (E.D. Mich. Jan. 24, 2017) to argue that Plaintiff failed to show she had a disability. (ECF No. 26 at PageID 114.) In *Barlia*, the court found that the plaintiff did not prove that she had a disability because she did not have "supporting medical evidence," "medical records," or "a medical professional's diagnosis" of her claimed health condition. *Barlia*, 2017 WL 345644, at *8. But *Barlia* was at the summary judgment stage, where a plaintiff must provide evidence supporting his or her claims. *Id.* at *1. Here, on a motion to dismiss, the Court accepts Plaintiff's factual allegations as true rather than requiring medical proof that she has long QT.

## CONCLUSION

For the reasons explained above, the Court **DENIES** the motion to dismiss.

**SO ORDERED**, this 8th day of August, 2025.

s/Thomas L. Parker<br>
THOMAS L. PARKER<br>
UNITED STATES DISTRICT JUDGE

---

[4] The Court acknowledges that these allegations mimic the language of 42 U.S.C. § 12102. But the statute is intentionally broad and inclusive, so it is hard to imagine a different way for a plaintiff to allege impairment of a major life activity without relying on some of the statutory text.